FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 MAR -6 PM 1:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| REMBERT C. MARTIN, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | |
| | } | 98-AR-1087-S |
| CITY OF BIRMINGHAM, | } | |
| | } | |
| Defendant. | } | |

ENTERED
MAR - 6 2000

## MEMORANDUM OPINION

On March 2, 2000, the jury in the above-entitled cause answered special interrogatories. Plaintiff, Rembert C. Martin ("Martin"), moves for a mis-trial, arguing that the jury's answers are irreconcilably contradictory.

The trial was of the claim by Martin, that the defendant, City of Birmingham ("City"), his employer, furnished him a racially hostile environment in violation of Title VII. The case proceeded only on a theory of alleged co-employee racial harassment, of which the City knew or should have known, and as to which it made no adequate response. There was no allegation by Martin, or attempt to prove, direct supervisory racial harassment. Over the City's objection, the court allowed testimony of alleged incidents of hostility that pre-dated the 180-day period preceding July 17, 1997, the date upon which Martin filed his EEOC charge. The reason for permitting this evidence was that such earlier incidents might

1



have been probative of the existence of a proscribed hostile environment during the period not barred by the 180-day statute of limitations. Over the City's objection, the court also allowed testimony of incidents alleged to have occurred after the EEOC complaint was filed and as to which no EEOC complaint has ever been filed, the reason here being that a hostile environment that continues after the filing of an EEOC complaint can be tacked on to the Title VII claim, and any injury sustained as a consequence of the subsequent hostile environment is compensable. This was all explained to the jury as part of the jury charge.

The court took under advisement and has not ruled on the City's motion for judgment as a matter of law at the conclusion of the evidence. The said motion has considerable merit and could well be granted if not rendered moot by the jury verdict.

The court framed special interrogatories, which in pertinent part, read as follows:

> The jury will answer the following questions ONLY TO THE EXTENT APPROPRIATE IN VIEW OF OTHER ANSWERS:
>
> 1. Did plaintiff prove by a preponderance of the evidence that during the 180-day period preceding July 17, 1997, he was subjected to unwelcome racial harassment in the work environment provided by defendant?
>
>    YES _____          NO _____
>
> 2. Did plaintiff prove by a preponderance of the evidence that he actually found that his work environment was abusive or hostile?
>
>    YES _____          NO _____
>
> 3. Did plaintiff prove by a preponderance of the evidence

>     that a reasonable person in plaintiff's position would have
>     found that the environment in which he worked was abusive or
>     hostile?
>         YES _____          NO _____


>     ONLY IF YOU HAVE ANSWERED "YES" TO **ALL THREE** OF THE PREVIOUS
>     QUESTIONS, PROCEED TO THE FOLLOWING QUESTIONS.

After a couple of hours of deliberation the jury sent to the court the following question:

>     If the answer to the First Question is "NO", do we need to
>     answer 2 and 3?

After discussing the jury's said question with counsel for both parties, the court brought the jury back into the courtroom and answered its question.  The answer was "NO".  The court explained that a "NO" answer by the jury to question No. 1 would obviate any need for it to answer any further questions.  The reason the court had  grouped these three questions, an idea which perhaps was conceptionally flawed but to which neither party objected, was that each of the three questions addressed ans essential element of plaintiff's case.  In other words, all three questions had to be answered "YES" in order for the jury to conclude that Martin had proven Title VII liability of the kind charged.  The preface to the jury interrogatories contained the clear instruction, in CAPITAL LETTERS, that the jury was not to answer any questions rendered unnecessary by other answers.

After the court answered the jury's single question, the jury again retired to its deliberation.  Shortly thereafter the jury

returned with its verdict or responses to the special interrogatories. It answered "NO" to question No. 1, gave no answer to question No. 2, and answered "YES" to question No. 3. It answered none of the questions which followed question No. 3.

Martin now argues that the jury's answers are in irreconcilable conflict and that the only solution is a mistrial and a new trial. After having considered the post-verdict memoranda from both parties and after having had an opportunity to reflect on the situation; and understanding that neither the court nor the parties can actually read the jurors' minds; the court is satisfied that the jury fully comprehended that by answering "NO" to question No. 1, it was deciding that the City had not violated Title VII *vis-a-vis* plaintiff. This finding ended its responsibility and ended its formal inquiry. By its gratuitous "YES" answer to question No. 3, the jury, by logical deduction, was simply expressing its belief that Martin was neither a charlatan and a thief nor a crazy person, and that it was not **unreasonable** for a person in his circumstances to reach an honest belief that he was the victim of racially motivated harassment, **even though the jury itself did not find the circumstances to constitute a racially hostile environment attributable to the City for the purpose of creating vicarious liability**.

There was ample evidence upon which this jury could have found that all managerial or supervisory personnel for the City acted

4

entirely appropriately under the circumstances they knew or should have known. Title VII liability for a hostile environment cannot be imposed on a theory of *respondeat superior* alone. In other words, the jury answers to question No. 1 and question No. 3 are not necessarily inconsistent or contradictory. In fact, they can readily be reconciled. For this reason the motion for a mistrial will be denied and a judgment will be entered in favor of the defendant.

DONE this 6th day of March, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE